JOHN P. SILK & another, trustees, *vs.* COMMONWEALTH.

Middlesex.    February 12, 13, 1973. — March 13, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Evidence,* Of value. *Damages,* Eminent domain. *Eminent Domain,* Damages. *Value. Error,* Whether error shown, Whether error harmful.

At the trial of a proceeding for assessment of damages for a taking by eminent domain of premises on which a car wash building was located, where there was evidence as to the unusual features of the

———————————

building indicating its special purpose, and, on a voir dire on the question of admitting evidence as to the reproduction cost less depreciation of the building when taken, the petitioners' expert testified that in the last five years he had participated in the purchase and sale of many car washes, there was no error in the judge's then excluding evidence of reproduction cost less depreciation because it had not been "established to ... [his] satisfaction that it ... [was] impossible to prove the value of the property" by reference to ordinary market data. [153] GOODMAN, J., concurring.

Where there was no error at the trial of a proceeding for assessment of damages for a taking by eminent domain in the exclusion after a voir dire of testimony of the petitioners' expert as to the reproduction cost less depreciation of the building taken, there was no error in then excluding his opinion of its fair market value as being based on that theory. [154]

At the trial of a proceeding for assessment of damages for a taking by eminent domain of certain property in a city, alleged error in the admission of evidence offered by the respondent of the sale price of particular property in another city which "helped" the petitioners' expert witness in arriving at his opinion of the damages sustained did not "injuriously" affect the "substantial rights" of the petitioners within G. L. c. 231, § 132. [154-155]

At the trial of a proceeding for assessment of damages for a taking by eminent domain of premises on a busy thoroughfare of a city on which there was a building with concrete floors, the admission in evidence of the price paid within a year of the taking for a concrete block building located on another thoroughfare of the city was within the discretion of the judge. [155]


PETITION for assessment of damages filed in the Superior Court on January 19, 1968.

The case was tried before *Dimond,* J.

*Samuel Bonaccorso* for the petitioners.

*Kevin P. Curry,* Assistant Attorney General, for the Commonwealth.

GRANT, J.    This is a petition for the assessment of the damages arising out of the respondent's taking in 1966 of some 172,000 square feet of land, together with two buildings thereon ("one a car wash building and the other a building used as a warehouse"), owned by the petitioners and located on Mystic Avenue and Shore Drive in Somerville. The jury returned a verdict for the petitioners in the amount of $314,000, and the case is here on the petitioners'

exceptions to the exclusion of evidence offered by them and the admission of evidence offered by the respondent.

The principal dispute between the parties centered on the value of the car wash building, which was 278 feet long and varied in width from thirty to forty feet. Two thirds of the building were one story in height, and one third was two stories in height. At the time of the taking the major portion of the ground floor housed mechanical car washing equipment, the balance having been devoted to related facilities such as boilers for supplying hot water and steam to the washing equipment, an office, a tool room, a laundry, and lavatories. On the second floor were a rest room and a stockroom.

1. One of the petitioners testified to a number of features of the building which supported his contention that the building was special purpose in nature, including the following: concrete floors in the car washing section of the building which were pitched in such fashion as to cause water to flow into large sumps located beneath the floor and from which water was drained from the building; a mechanical conveyor which was imbedded in the concrete floor and which had a 212 foot long guide rail employed in pulling and guiding cars through the car washing operation; a separately drained pit in the floor under a wheel washing machine; electrical conduits and plumbing installed several inches below the surface of the concrete floor to serve the car washing machinery; and large exhaust fans in the exterior walls to prevent accumulations of condensed moisture inside the building. The same petitioner testified without objection that in his opinion the "fair market value of the building and the land which was taken" was $700,000.

A voir dire was then held on the question of admitting evidence of the reproduction cost less depreciation of the car wash building at the time of the taking. Under an agreement that the foregoing testimony should be incorporated by reference, the petitioners called one William Engle, who testified that he had been engaged by the petitioners to "make a survey of the land and building

taken"; that since 1951 he had been a licensed realtor in five States (including Massachusetts), specializing exclusively in the purchase and sale of car washes; that in the last five years he had participated in the purchase and sale of seventy-five car washes in various States, including car washes located in Springfield, Raynham, Dorchester, Cambridge and Medford in this Commonwealth; that he was the author of articles in a trade magazine distributed among car wash owners; that he had become acquainted with at least 1,000 car washes since 1951; and that "a car wash has to be a special purpose building because a car wash is an assembly line business and has to be built for a special purpose." One Willard Grush, also called by the petitioners as an expert witness, testified on voir dire that in his opinion the car wash building in question was a special purpose building.

At the conclusion of the voir dire the trial judge stated that he would permit the petitioners to introduce evidence designed to show that the highest and best use of the building in question was as a car wash but ruled, subject to the petitioners' exception, that he would exclude evidence of reproduction cost less depreciation because the petitioners had "not established to the satisfaction of the [c]ourt that it is impossible to prove the value of the property without dispensing with the usual rule" of valuation. In the course of explaining his ruling the judge specifically quoted the following passages from the case of *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 518: "[T]he usual rule should be departed from and testimony of this kind admitted only when without it it is impossible to prove the value of the property in question"; and "The burden is on the owner to show that it is impossible to prove the value of the property without dispensing with the usual rule."

It is apparent from what has been said that the trial judge was well aware of the controlling principles of law governing the admissibility of evidence of reproduction cost less depreciation (see, in addition to the *Tigar* case, *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 193-198; *Bachelder Truck Sales, Inc.* v.

*Commonwealth,* 350 Mass. 270, 273; *Lipinski* v. *Lynn Redevelopment Authy.* 355 Mass. 550, 551-552; Cf. *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. 143, 146-149) and that he was faced with the necessity of making a preliminary finding of fact (compare *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 573-574, and cases cited) on the question whether it was possible or impossible to determine the fair market value of the car wash building by reference to ordinary market data. The evidence with respect to the unusual features found in the building and to the effect that the building was special purpose in nature had to be weighed against the evidence with respect to the volume of sales of car wash buildings in which Engle had participated in the previous five years, including several in the metropolitan Boston area. The evidence permitted, but did not require, a conclusion either that it was possible or that it was impossible to establish the value of the building by reference to ordinary market data, and we construe the above quoted statement of the judge to mean that he was not convinced as matter of fact that it was impossible to prove value in this particular case without resort to evidence of reproduction cost less depreciation. In effect, the judge found as preliminary matter of fact that this was not one of "those rare instances, when property is of such a nature or so situated or improved that its real value for actual use . . . [could not] . . . be ascertained by reference to market value, [so] that the standard of special value . . . [must] . . . be resorted to." *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 517-518.[1] We cannot say that the judge's preliminary finding was wrong. *Lipinski* v. *Lynn Redevelopment Authy.* 355 Mass. 550, 551-552. This being so, there was no error in excluding evidence of reproduction cost less depreciation, and the exception to such exclusion must be overruled.

---

[1] We note in this connection that the petitioners have not briefed their exception to the admission in evidence of the price at which a car wash building on Middlesex Avenue in Medford was sold in 1965. This was one of the sales in which Engle said he had participated.

2. Immediately following the conclusion of the voir dire Engle was asked for his opinion of the fair market value of the "car wash" as of the date of the taking. The respondent objected, and the answer was excluded subject to an exception taken by the petitioners, who made an offer of proof to the effect that the witness would have expressed an opinion in the amount of $595,000. No explanation was given of the basis or reasons for such opinion. As we read the bill of exceptions the objection was not to the testimonial qualifications of the witness (see *Muzi* v. *Commonwealth,* 335 Mass. 101, 104-106; *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 194-195, 197-198) but to the fact that Engle, in view of his earlier testimony on voir dire, was expected to testify to an opinion based (in part at least) on reproduction cost less depreciation. If, as we believe, such was the basis of the objection and the ruling, there was no error. *Lipinski* v. *Lynn Redevelopment Authy.* 355 Mass. 550, 552. If the excluded opinion would not have been based on reproduction cost less depreciation, it was the responsibility of counsel so to advise the court before it ruled on the objection. If the bill of exceptions does not accurately reflect what transpired at the time of the ruling, the responsibility also lies with counsel. In any event, no error has been made to appear.

3. Finally, the petitioners argue their exceptions with respect to the admission of evidence offered by the respondent of the sales prices of two properties, one on Mystic Avenue in Medford and the other on McGrath Highway in Somerville. After admitting the price of each sale the judge specifically and carefully advised the jury that it was for them to determine how much weight, if any, should be given to the sales prices. As the petitioners' own expert witness Grush had already testified during the petitioners' case in chief that the first of these sales "helped him to a certain extent" in arriving at his opinion of $666,000 as the total amount of damages sustained as a result of the taking, we do not see how the "error complained of has . . . injuriously affected the substantial rights of the" petitioners within the meaning of G. L. c. 231, § 132. The other

sale, which occurred within a year of the taking, was of a concrete block building (but faced with brick) which was part one story and part two stories, which contained 4,000 square feet of office space and 7,000 square feet of garage space and which, like the petitioners' car wash building, contained several overhead doors and was located on another busy thoroughfare in Somerville. We cannot say that the trial judge abused his discretion in admitting this sale price in evidence and instructing the jury as he did. *Valley Paper Co.* v. *Holyoke Housing Authy.* 346 Mass. 561, 569, and cases cited.[2]

In view of the foregoing we find it unnecessary to decide whether the petitioners are barred from appellate review by the possibility that this case went to judgment under Rule 79 of the Superior Court (1954) during the interval between the expiration date of the second extension of time for filing a bill of exceptions and the date on which the trial judge purported to act under one or both of the concluding two sentences of G. L. c. 231, § 113, as amended, to grant a third such extension.

*Exceptions overruled.*

GOODMAN, J. (concurring in result). I agree in overruling the exceptions to the trial judge's refusal to admit evidence of the depreciated reproduction cost of the car wash building. However, as I read the statements made by the trial judge in taking this action, he ruled that the evidence offered by the petitioner was inadmissible as a matter of law. On the record I believe he was correct.

---

[2] Our decision on this point does not rest on the possibility that either of the disputed buildings sold may have been comparable to the "warehouse" located on the petitioners' property but nowhere described in the bill of exceptions, or on any of the photographs which were marked in evidence, which were incorporated by reference in the bill of exceptions, but which are nowhere identified in the bill.